23-2123. Next case will be Renteria v. New Mexico Office of the Superintendent. Case number 23-2123. These are very similar case numbers. Good morning and may it please the court, Nicholas Hart on behalf of Appellants. For 40 years, the federal courts have recognized that Christians engage in health care sharing as a religious practice. Despite this, the New Mexico Superintendent of Insurance has sought to transform this religious practice into health insurance by requiring that health care sharing ministries comply with the New Mexico Insurance Code, including the New Mexico Insurance Code's minimum coverage provisions. But those minimum coverage provisions would require, in contravention of appellants' religious beliefs, payment for health expenses related to contraception and abortion coverage. Because of this, appellants sought to preliminarily enjoin the superintendent's actions. The district court denied that request, finding that the appellants were unlikely to succeed on the merits because the exemption scheme that is found in the insurance code exempts only those activities where the sharing of health expenses is ancillary, while health care sharing has that as a primary purpose, and because there was not sufficient evidence of animus or hostility towards appellants' religious beliefs. And that conclusion was wrong for four reasons. Counsel, before you launch into your reasons, I was hoping you could clarify what order is on appeal. Because it seems to me that there were two orders, the July order granting the motion to dismiss, and then an October order on reconsideration. And there is not a separate notice of appeal from the October order or an amended notice of appeal. Did you have to do that to appeal both? And maybe, I guess, I'm tangling my own question. Are you just appealing the July order? So, Your Honor, we are appealing both under the rules, I believe it's Rule 4, that when there is some type of intervening order, the appeal would get held in abeyance, and the notice of appeal would apply also as to that new order, I'm sorry, the filing of a motion to reconsider, the notice of appeal gets held in abeyance and applies to the new order. So your position is you didn't have to amend or file a new notice of appeal because of the abeyance? That's correct, Your Honor, and the abeyance then, under Rule 4, makes the notice of appeal the time that it's filed is deemed to be the time of the order on the motion to reconsider. What part of Rule 4, Prop 4, are you talking about? I don't have the exact subsection with me, Your Honor. I do apologize because it was not raised by the other side, but there was a- But your position is that both the July and the October are properly before us, is that your position? That is our position, Your Honor, although the October order, the July order really didn't address any of the issues, it's only the October order that addressed the merits of the claim. I will say there was also a motion to hold the appeal in abeyance where we do cite and our analysis related to Prop 4. As for the general applicability, which is the first argument, Your Honor, the district court here erred in applying this ancillary test, which it has constructed on its own to determine that the New Mexico Insurance Code is generally applicable in this case. We have a line of cases from the Supreme Court, from Likouri-Babalui to Fulton v. Philadelphia, which really cemented and expanded this, is that if there is some type of action that allows a, that prohibits a religious activity, but allows a similar secular activity, an And that's exactly what happens here, Your Honor. Counsel, in the comparability analysis between the religious activity you claim has been prohibited, but is permitted for other secular organizations, one is the fraternal organizations. As the district court noted, those are not secular by and large. So are you focusing more on the labor unions or do you claim still both the fraternal organizations and the labor unions are those that are being, secular conduct that's being permitted while your religious activity is being prohibited? We claim both because what the district court did in that was actually reverse what Fulton says. And Fulton doesn't require that the exemption that is relied upon or applied mean that it is only secular activity that is applied. Instead what it, that is allowed, instead what it says is that if there is some type of equivalent secular activity while there's a prohibition on the religious activity, that that means the law is no longer a law of general applicability and strict scrutiny applies. So we think the district court improperly reversed that analysis. The appellants just do not have to show that all fraternal organizations are secular in order for the law to be a law of general, to not be a law of general applicability. So to be a fraternal organization under New Mexico state law, does religious affiliation matter? It doesn't have to, no. Well I'm, would, if I, I can't even, Knights of Columbus was an example that was thrown out in some of the discussion, has religious affiliation, if the Knights of Columbus were not religiously affiliated, would they still be able to qualify as a fraternal organization? Yes. Okay. Go ahead. So it's not the religious nature or secular nature of a fraternal organization that allows it to fall into this exemption. It's the structure of it as stated by the office of the superintendent of insurance in the red brief, in the response brief. And the issue with that is that's taking the analysis away from the actual conduct that is being prohibited, the actual religious practice, and putting it more towards the formation or the structure of an organization. And that's not what Fulton and even the Kumi Babalui looked to, or looking at the conduct itself. What is the government's action directed towards when it is prohibiting these actions? If I can move to the neutrality and hostility argument. So the district court found that there just was no showing of official expression of hostility towards the appellants, and also made factual findings about the documents that are cited in the brief. But this court just last week issued a case, Doe's versus University of Colorado. And in there, this court made clear that the bar for an inference of hostility is not this high bar that is only present in Masterpiece Cake Shop, of comparing something to slavery, or comparing something, calling something despicable. It also applies when religious practices are characterized as rhetorical, insubstantial, or insincere. And that is what the office of superintendent did here. And that has always been appellants' arguments. Even in the briefs before this case, the office of the superintendent of insurance refers to appellants' practices and beliefs as secular. The papers compare this to a scam, and to scammers trying to take individuals' money without protection. It's been referred to by the superintendent of health care sharing as nothing more than being charitable, and as a value shared by people of all creeds or no creeds. And that's at 482 in the appendix, and the others at 407 to 408. And what this does, Your Honors, is this is reducing the primary focus, the primary motive behind these statements and the actions towards the appellants, because the district court determined that it didn't pass this high bar of being explicitly hostile. But now we know, after this court's ruling in Doe's v. University of Colorado, that that is just not required in order to show non-neutrality or hostility. And I would be happy to submit a 28-J letter if the court wants. I found this last night while preparing, when it was only issued about six days ago. You're talking about a 28-J letter with the Doe's case? Yes, if the court does want further analysis on it, only because it was issued six days ago. We can probably analyze it. But would you like him to submit it, or would you just take note of it? That's fine with me, Your Honors. The last two issues are both the anti-entanglement doctrine and preemption. I would like to reserve some time for rebuttal, so I will jump to preemption, which is the district court's failure to even address this preemption argument at all that was raised in the papers is, by itself, sufficient to reverse the district court's order. And the appellants have argued, have put forward a conflict preemption argument, which neither the superintendent or really the district court have ever squarely tackled. And that is that there is, under the Internal Revenue Code, a statutory structure that healthcare sharing must follow and must engage in, and regardless of whether it was created as part of an exemption to the individual mandate, and regardless of what the court may find, really, as it compares to if the individual mandate still applies, they have to comply with those requirements. And those requirements include operating as a nonprofit, include the opposite of the healthcare sharing must be limited to those with a common sense of religious purposes, also requires uniformity. Is the uniformity the piece that really, you argue, gives rise to the potential conflict the most? I think it's both the non-discrimination and the uniformity, right? They cannot be a healthcare sharing ministry if they need to comply with the non-discrimination and allow individuals of all creeds to participate in the ministry. But also, they need to have a nationwide standard for sharing, which they would not be able to do if they had to comply with each individual state's insurance codes, which have their own minimum coverage. Is that speculative, or have you looked at other states to see whether there would be conflict? We have looked at other states. I mean, 38 of the 50 states at this point have determined that it's just not insurance, and they have some type of safe harbor law, right? So in those 38 states, they would be safe. But as for here, New Mexico's insurance code directly conflicts with the national sharing provisions that it would have to follow. With that, your honors, I'd like to reserve the remainder of my time. I ask that the order of the district court be reversed. Thank you, counsel. May it please the court. Steve Matisse, General Counsel, New Mexico Office of Superintendent of Insurance, appearing on behalf of Ellis Cain, Superintendent of Insurance. The Superintendent of Insurance's decision, the administrative decision, as a gospel-like was engaging in the business of insurance, as that term is defined in section 59A-1-5 of the New Mexico Insurance Code, and that gospel-like violated section 59A-16-21.2, subparagraph 3 of the insurance code, by selling an unapproved health benefits plan in New Mexico. Counsel, are the fraternal organizations violating the insurance code? The fraternal organizations are governed by Article 44 of the insurance code. I believe, from memory, there's approximately 43 different provisions, sections of that particular article that govern fraternal organizations, and including in those 43 sections is another section that imposes, that requires a fraternal organization to comply with several other provisions of the insurance code, including the anti-discrimination provisions, including the requirements of what the contracts must contain for the fraternal organizations. So contrary to the argument being advanced, fraternal organizations are not exempt under the insurance code. They're regulated. I mean, they're certainly exempt from parts of the insurance code. You would agree with that, wouldn't you? Yes, the insurance code is very lengthy. I believe there's like 62 articles, and not all of those articles would apply to an insurance company, nor would they apply to a fraternal company. How about this? If they weren't, if they didn't have an exemption, would they be in violation of the insurance code? They have to obtain permission to engage, to sell, to have members in New Mexico. We issued them a certificate of authority. They apply for the certificate of authority, and after obtaining that certificate of authority, they're allowed to operate their fraternal benefit society in New Mexico. Understood, but the reason for that is because they have an exemption. That's why they are able to come to you and get a certificate of authority. I suggest they don't have an exemption. The insurance code regulates them extensively. They're not regulated as a traditional commercial insurance company. They're regulated as a fraternal benefit society. Okay, so are the regulations you're contending that Gospel Light is not complying with the same ones that the fraternal organizations must comply with? In other words, was Gospel Light deemed for violating a regulation that the fraternal organizations don't have to comply with? If a fraternal benefit society was to sell a health benefits plan in New Mexico that had not obtained approval from the superintendent, it would be in violation of the insurance code. Okay, I'm not sure that I follow that as an answer to my question, but go ahead. Okay, the appellants brought an as-applied challenge to the superintendent's decision in that their challenge is directed to the interpretation and application of the two provisions of the insurance code. In making this applied challenge, appellants argue that the actions of the superintendent should be reviewed using a strict scrutiny standard. Using that standard, the appellants argue that they're likely to succeed on the merits of their free exercise, establishment clause, and preemption claims. Let me ask you a question about that. You haven't made any argument as to whether application of the code to the appellants can succeed under strict scrutiny. Do you have an argument as to that? Or is your position just that it's rational basis, and you aren't presenting an argument as to strict scrutiny? We have not presented an argument either below or in the appellate court that is addressing the analysis of the actions using a strict scrutiny standard. It's our position the rational basis standard applies because there's no showing that these laws, the definition of insurance, or the other provision of the insurance code are not neutral and generally applicable. Appellants' primary argument for use of the strict scrutiny standard is that the insurance code is not a neutral law of general applicability. A law is neutral as long as its object is something other than the infringement restriction of religious practices. To determine the object or purpose of a law, the court must first look to the language of the law. Neutrality requires a law to not discriminate on its face. A law lacks facial neutrality. It refers to religious practice without a secular meaning discernible from the language of content. A review of both provisions of the insurance code at issue in this proceeding will point out the object is something other than the infringement or restriction of religious practices. Second part of what's commonly referred to as the Smith analysis requires the court to examine whether the law is generally applicable. A law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct providing a mechanism for individualized exemptions. Counsel, the plaintiffs here are alleging though that it has not been applied neutrally, it's not generally applicable, and there's evidence of that in expressions of hostility towards their religious practice from the superintendent and some advisories that were issued. Were there other non-secular sharing plans that were not ACA compliant that were sort of targeted by those advisory or was it only gospel-like? I wouldn't use the term targeted. We took enforcement action against some other healthcare sharing entities. One was non-secular. Okay, because I mean, I read those advisories to say to the people of New Mexico, essentially, watch out with some of these products. You may not be getting a typical type insurance that complies with the ACA that you think you purchased. But again, we're trying to evaluate whether or not that was hostile here to the plaintiffs. And so I'm just trying to understand sort of what the scope of those advisories really was. The superintendent of insurance has a duty to warn consumers when they believe that a product that is being offered in the marketplace is not appropriate or not in compliance with the insurance code. And that's what this bulletin did. Am I right that one of the bulletins, though, was specific only to healthcare sharing ministries, so those that were religiously based? I don't recall the exact wording of the bulletin, but I don't believe it directed containing reference that they were religiously based, just referred to them as healthcare sharing ministries. Counsel, how should we think about the fact that you did not take enforcement action for many, many years? Prior to recent, a few years ago, we, the office of superintendent of insurance, did not receive any complaints. The agency is not a large agency and generally only looks into insurance or some type of practice when we receive a consumer complaint. As for Gospel Light, we received no complaints. Two consumer complaints that initiated an investigation, which eventually resulted in the enforcement action being taken against them. Further, we had no idea that they were in existence operating in New Mexico. Until those complaints came to our consumer assistance bureau, they were flying under the radar in a sense. You're aware that before you took, got the complaints and took administrative action, that there were healthcare sharing ministries operating in New Mexico, weren't you? Best of my understanding, no. The office of superintendent had no firsthand, direct knowledge that they were operating in New Mexico. Okay. Was the office aware that the ACA had a provision specifically relating to healthcare sharing ministries? Fannie, can I answer the question? I'm not sure. I guess what my point is, is that if you're on notice through federal law that these healthcare sharing ministries exist, in your own exchange as a derivative of the ACA, is it not? Yes. I mean, doesn't that put you on notice that healthcare sharing ministries are a thing and probably operating within your state? It would put us on, it could potentially put us on notice that they're operating in our state, but short of having some reasonable suspicion or basis to conduct an investigation, we just can't, we don't know who they are, where they exist, where they're located. So who do we reach out and ask them, are you operating in our state? How many members do you have? How much money do you collect each year? How much do you pay out? We don't have that information available to us. Okay. Let me ask you another question. One of the rationales advanced by the district court when comparing healthcare sharing ministries and fraternal organizations was that the healthcare sharing ministries, that cost sharing for healthcare is their primary function and the fraternal organizations, the healthcare sharing that they do was an ancillary function. Is that an argument you're continuing with on appeal here? I believe the district court, when they were talking about the ancillary, that it was ancillary was for labor unions when they offer a health program, health benefits program to their members, it has the ancillary to their primary purpose of being a labor organization. Fraternal organizations, they do have other purposes, but the primary purpose is to have people join the organization and get the benefits like some type of life insurance policy, maybe some health insurance coverage, other type of coverage. Right, and I guess my question is, is on appeal here, are you suggesting that that matters? Or are we just looking at the activity? Just looking at the activity. Okay. Counsel, can you address the preemption argument and the plaintiff's argument that the district court's failure to properly address it and you need to respond to it is in and of itself reversible? Well, the preemption argument? Yes. If you actually, if you look at the preemption argument because of the McCarran-Ferguson Act, the states have the right to regulate insurance. If you review the language of the Affordable Care Act, there's nothing in the Affordable Care Act that says that qualifying as a healthcare sharing ministry under the Internal Revenue Code exempts that healthcare sharing ministry from being regulated by the state. And one of the exhibits that was in the appendix, I believe it's at nine, page 90, was the letter that Gospel Light received from CMS when they qualified as a healthcare sharing ministry and explicitly stated that they were making no determination that they were not subject to the regulation by the states. Do you have any more questions? No, I don't, thank you. Let me ask you one more thing and then we'll move on here. So I think I recall from the briefing that there was an argument that the preemption issue doesn't have any legs because the individual mandate was reduced to zero and so it really has no effect. Is that still a position you're advancing? That is a part of our position when it comes to preemption. The primary argument is that the McCarran-Ferguson gave authority to the states to regulate insurance. Unless a federal law specifically includes an exemption, a preemption of state law similar to ERISA where it says that they are preempting any state law that tries to regulate a union-created policy. That's our primary argument. There's no showing that there is any federal law and Attorney General Braden will call to any other federal law that says that the states cannot regulate health care sharing ministries. Okay, thank you, sir. Your time has expired. Let's add a minute to the rebuttal. Thank you. To start with the preemption argument that the superintendent included, the appellants have never contended that a state cannot regulate health care sharing in any way. Health care sharing ministries are non-profits which are regulated by the Attorney General's office. They are subject to consumer protection laws. They are subject to regulation in 38 separate states. What the appellants are saying is that Congress has made a decision that health care sharing ministries should exist and that they exist outside of the scheme of insurance. And by requiring or regulating a health care sharing ministry as if it was a commercial health insurance plan, that creates the conflict preemption issue that was discussed before. Your conflict preemption argument depends on you making a showing that compliance with both state and federal law is impossible for your client, right? That's correct. And can you explain what that means in the context of this case? How is it impossible to comply with both state and federal law? There are three primary ways. The first is that state law has the anti-discrimination provision that says that you must allow anyone or serve anyone regardless, in this case, as relevant religion. But the federal law requires that a health care sharing ministry be made up of individuals that share a common faith, which is to the exclusion of those that do not share that faith. So they would not be able to fulfill that requirement under the Internal Revenue Code. The second is that operating as a commercial health insurance plan as a state is requiring Gospel Light to do would remove the non-profit status that Gospel Light enjoys and other health care sharing ministries enjoy and that is required to be a health care sharing ministry. Will you say that again? So operating as a commercial health insurance company as the Office of Superintendent Insurance is insisting that a health care sharing ministry does would eliminate the non-profit status under 501M and that would prevent any organization within that engages in health care sharing in New Mexico from being recognized federally as a health care sharing ministry because the regulation requires that they be a 501C3 non-profit entity. The last is also... Before we move past that, is that a preemption conflict or is that just a preference? Meaning, I'm sure every insurance company in New Mexico would prefer to not be taxed but they take that on by the way they operate and there's not a preemption argument there. So saying that you would lose your non-profit status, does that, again, create a legal preemption matter or is it just saying, well, it's something we would have to give up that we prefer not to? And if I may answer, Your Honor. Oh, go ahead. So it is a preemption issue because federal law requires a health care sharing ministry to be a 501C3 non-profit. So this is not about a preference. This is that New Mexico is requiring a health care sharing ministry to operate in a way that cannot be a 501C3 non-profit and federal law requires them to be a 501C3 non-profit. So that is the conflict with that. Your Honor, if there are no further questions, I ask that the judgment of the district court be reversed with instructions to enjoin the superintendent's actions. Judge Ressman, anything else? Okay, thank you. Thank you. Thank you, counsel. Okay, the case will be admitted and counsel are excused. Thank you.